United States District Court
Southern District of Texas
FILED

NOV 2 5 2003

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ANNA C. RECIO | § |
| | § Civil Action No. B-03-122 |
| Plaintiff | § |
| | § |
| v. | § |
| | § |
| JO ANNE B. BARNHART, | § |
| Commissioner of the | § |
| Social Security Administration | § |
| | § |
| Defendant | § |

## MOTION FOR SUMMARY JUDGMENT

The plaintiff moves the Court for summary judgment on the complaint for judicial review of a denial of a claim for social security benefits based on the administrative record which has been filed with the Court.

## PLAINTIFF'S BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF JURISDICTION

This action for judicial review of a denial of a claim for social security disability benefits is authorized by the Social Security Act (42 USC 405(g) and 1383(c)(3)). The plaintiff has exhausted all administrative remedies and filed a timely request for judicial review.

### STATEMENT OF THE ISSUE

Whether the findings with respect to the plaintiff's residual functional capacity and ability to perform jobs identified by a vocational expert are consistent with applicable legal standards and supported by substantial evidence when the administrative law judge failed to assess specific work-related mental limitations and when the vocational expert had to speculate on the degree of the plaintiff's limitations.

## STATEMENT OF THE CASE

### *Administrative Proceedings and Disposition*

An administrative law judge ("ALJ") held a hearing on the denial of the plaintiff's claim for disability benefits under the Social Security Act ("Act") on February 6, 2003, in McAllen, Texas. In the administrative decision issued on March 28, 2003, the ALJ found that the plaintiff had depression; that she had a residual functional capacity for unskilled work with moderate limitations in concentration; and that the plaintiff could do the jobs identified by a vocational expert. The Appeals Council denied the request for review of this decision on May 16, 2003. [TR 5-8, 12-21, 24-60].

### *Plaintiff's Application, Background, and Allegations*

The plaintiff filed an application for disability benefits under title XVI of the Act on August 9, 2001, alleging an inability to work because of depression and post-traumatic stress disorder. The plaintiff was 48 years old at the time of the hearing; completed the equivalency of the twelfth grade of school; and has past relevant work history as a secretary. [TR 109-112, 114, 120, 123].

### *Medical Evidence and Opinion*

A consultative psychiatric report shows a diagnosis of recurrent major depression with a guarded prognosis. [TR 188]. The State agency reviewing physicians completed a Psychiatric Review Technique Form showing "moderate" limitations in daily activities, social functioning, and concentration. [TR 181]. These physicians also completed a Mental Residual Functional Capacity Form showing "moderately limited" ability in areas of sustained concentration, social interaction, and adaptation to changes in the work setting. [TR 191-193].

2

*Vocational Evidence and Opinion*

The ALJ asked the vocational expert "what type of concentration and adaption to change and stress does one need" to perform unskilled work. She answered that unskilled work involves routine, repetitive tasks that "typically don't involve significant degree of concentration..." [TR 49]. The vocational expert gave examples of unskilled jobs such as "maid" or "food sorter" and, without reference to any study, stated that 50 percent of the potential occupational base for unskilled jobs would be eroded if one had moderate difficulty in concentrating and persistence and pace. She explained her scientific basis for this conclusion as follows [TR 50]:

"I'd probably go right up the middle and say about 50 percent."

The ALJ then asked how the job of maid or food sorter would be affected if an individual had moderate limitations in daily activities, social functioning, and concentration. The vocational expert responded that "there's some disability but it doesn't preclude work." [TR 56].

## STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether the decision is supported by substantial evidence and whether the proper legal standards were applied in evaluating the evidence (42 USC 405(g) and 1383(c)(3)). See: Boyd v. Apfel, 239 F. 3d 698, 704 (5th Cir. 2001) [quoting Harris v. Apfel, 209 F. 3d 413, 417 (5th Cir. 2000)].

## ARGUMENT

The findings with respect to the plaintiff's residual functional capacity and ability to perform jobs identified by a vocational expert are not consistent with applicable legal standards and not supported by substantial evidence because the ALJ failed to assess specific work-related

mental limitations and the vocational expert had to speculate on the degree of the plaintiff's limitations.

Social Security Rulings are published in the Federal Register under the authority of the Commissioner of Social Security and are binding on all components of the Social Security Administration. The rulings represent precedent final opinions and orders and statements of policy and interpretations of the Social Security Act which have been adopted by the Administration (20 CFR 402.35(b)(1)). Social Security Rulings are not binding on the court because they do not have the force and effect of law; however, they may be consulted when the statute or regulation at issue provides little guidance. Myers v. Apfel, 238 F. 3d 617, 620 (5th Cir. 2001) [citing other Fifth Circuit cases relying upon administrative rulings in evaluating ALJ decisions].

Social Security Ruling 85-15 states that the ALJ may not assume that failure of a mental disorder to meet or equal a listed impairment equates with an ability to do unskilled work. This presumptive limitation is not permitted merely because the plaintiff has a mental disorder. This ruling explains:

> "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make the performance of an unskilled job as difficult as an objectively more demanding job. For example, a busboy need only clear dishes from a table. But an individual with a severe mental disorder may find unmanageable the demand of making sure that he removes all of the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable to some mentally impaired persons. Any impairment-related limitation created by an individual's response to the demands of work, however, must be reflected in the RFC assessment."

Social Security Ruling 96-8p states that the limitations identified on the Psychiatric Review Technique Form (completed as a form at the lower levels of adjudication and incorporated into the written decision at the ALJ level of adjudication ) are not a residual functional capacity assessment but rather a rating of the severity of the plaintiff's mental impairment at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of various functions such as the ability to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a routine work setting (20 CFR 416.920a, 416.921(b) and 416.945(c)).

Social Security Ruling 96-9p specifically provides that mental limitations may cause a significant erosion of the occupational base for unskilled sedentary work (although work at any other level of exertion would be similarly adversely affected):

> "Mental limitations and restrictions: A substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e. 8 hours a day, 5 days a week, or equivalent schedule), will substantially erode the unskilled sedentary occupational base and would justify a finding of disability. These mental activities are generally required by competitive, remunerative, unskilled work:
>
> > Understanding, remembering, and carrying out simple instructions.
> >
> > Making judgments that are commensurate with the functions of unskilled work — i.e. simple work-related decisions.
> >
> > Responding appropriately to supervision, coworkers and usual work situations.
> >
> > Dealing with changes in a routine work setting.

> A less than substantial loss of ability to perform any of the above basic work activities may or may not significantly erode the unskilled sedentary occupational base. The individual's remaining capacities must be assessed and a judgment made as to their effect on the unskilled occupational base considering the other vocational factors of age, education, and work experience. When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource."

The ALJ put the cart before the horse by first assuming that the plaintiff could do unskilled work and then asking the vocational expert "what type of concentration and adaption to change and stress does one need" to perform unskilled work. [TR 49]. The hypothetical question posed to the vocational expert, which appears to be only an after-thought, was how the job of maid and food sorter would be affected if an individual had moderate limitations in daily activities, social functioning, and concentration. [TR 56]. These limitations, however, are only the rating of the severity of the plaintiff's mental impairment at steps 2 and 3 of the sequential evaluation process. The ALJ failed to make a mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process which requires a more detailed assessment of various functions such as the ability to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a routine work setting. According, a more detailed evaluation of the plaintiff's mental limitations is required. See: Lancellotta v. Secretary HHS, 806 F.2d 284 (1st Cir. 1986) [discussing the individualized assessment required by Social Security Ruling 85-15]. See also: Sanders v. Sullivan, 983 F. 2d 822 (8th Cir. 1992) [ALJ erroneously assumed, without further psychological or vocational testing and without expert vocational testimony, that work-related stress resulting from a mental disorder would be minimized in an unskilled job].

6

Moreover, the ALJ appeared to be eliciting the residual functional capacity assessment from the vocational expert's opinion of what unskilled work requires rather than on a medical expert's opinion about the effects of the plaintiff's mental disorder on her ability to work. The vocational expert is qualified only to testify to jobs that a plaintiff may be able to perform with a given residual functional capacity, not to offer an opinion about a plaintiff's residual functional capacity. See: Randall v. Sullivan, 956 F. 2d 105, 107 fn 1 (5th Cir. 1992); Social Security Ruling 96-8p.

Finally, the ALJ's reference to "moderate limitations in concentration" in the assessment of the plaintiff's residual functional capacity is problematic. The use of such a term without additional qualifying information about what specific work activities are affected leaves unspecified the precise extent of the plaintiff's mental limitations. As detailed in Social Security Ruling 96-8p, such vague assessments should not be used as residual functional capacity findings. Moreover, posing a hypothetical question to a vocational expert that includes only a vague reference to "moderate limitations in concentration" improperly requires that the vocational expert infer the degree of limitation by the term. The vocational expert seemed to contrive her own definition of the term moderate." When asked how the job of maid and food sorter would be affected if an individual had moderate limitations in daily activities, social functioning, and concentration, the vocational expert responded that "there's some disability but it doesn't preclude work." [TR 56]. Her testimony is also dubious because her statement that 50 percent of the occupational base for unskilled jobs would be eroded if one had moderate difficulty in concentrating and persistence and pace has no reliable basis [TR 50]:

7

"I'd probably go right up the middle and say about 50 percent."

Why "up the middle?" If three different areas of functioning are affected — daily activities, social functioning, and concentration — why not conclude that 33 percent of the potential occupational is eroded? The ALJ decision fails to establish (1) that the expert vocational testimony is based upon sufficient facts and data, (2) that the expert vocational testimony is the product of reliable principles and methods, and (3) that the vocational expert applied the principles and methods reliably to the facts of the case.

This case should be remanded to the Commissioner for a supplemental hearing, an assessment of the plaintiff's specific work-related mental limitations, and a new decision.

## RELIEF REQUESTED

The Court should remand this case to the Commissioner pursuant to sentence four (4) of 42 U.S.C. 405(g) for further proceedings. The Court should also award reasonable attorney fees, court costs and other expenses of litigation, and all other legal or equitable relief to which the plaintiff is entitled in connection with the present action.

Respectfully submitted,

INGRAM LAW FIRM, P.C.

By: _____
JOHN J. INGRAM II
State Bar No. 24025447
Southern District of Texas Bar No. 25468
3016-A N. McColl
McAllen, Texas 78501
(956) 661-0074 Telephone
(956) 661-0047 Facsimile

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was mailed to the opposing counsel on _____ by United States mail and by facsimile.

Kim E. Garcia, Attorney-in-Charge
Special Assistant U. S. Attorney
Office of the General Counsel, SSA
1301 Young Street, Suite 430
Dallas, Texas 75202
Telephone: (214) 767-7323
Facsimile: (214) 767-9189

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ANNA C. RECIO | § |
| | § Civil Action No. B-03-122 |
| Plaintiff | § |
| | § |
| v. | § |
| | § |
| JO ANNE B. BARNHART, | § |
| Commissioner of the | § |
| Social Security Administration | § |
| | § |
| Defendant | § |

## JUDGMENT

The Court, having reviewed all matters of record in this case, finds that the decision of the Commissioner of the Social Security Administration is reversed and remanded with instructions for further action by the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Signed this _____ day of _____, 20__

_____
United States District Judge